KANZENBACH, Plaintiff and Respondent, vs. S. C. JOHNSON & SON, INC., and another, Defendants and Appellants: FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Impleaded Defendant and Respondent.*

*October 9—November 7, 1956.*

* Motion for rehearing denied, with $25 costs, on January 7, 1957.

For the appellants there was a brief by *Fischer, Brunner &
Strossenreuther* of Shawano, and oral argument by *L. J.
Brunner*.

For the respondents there was a brief and oral argument
by *H. E. Koehler* of Shawano.

BROWN, J. Appellants submit that the trial court erred in denying their motions after verdict to change the answers to the questions of Armstrong's causal negligence from "Yes" to "No" and the comparative-negligence answer to "Zero" in respect to Armstrong, and to give judgment for the defendants upon the verdict so changed.

If there is any credible evidence which, under any reasonable view, fairly admits of an inference that supports the jury's finding, neither the trial court nor an appellate court has any authority to change the jury's answers or findings. *Auster v. Zaspel* (1955), 270 Wis. 368, 370, 71 N. W. (2d) 417, and cases there cited.

The credibility of witnesses and the weight to be given to their testimony are matters for the jury, not for the trial court. Mr. Kanzenbach testified that he approached the intersection of the two highways from the west at a speed of approximately 35 miles per hour, driving in his own right traffic lane. Two automobiles were then in sight coming toward him from the east. He signaled with his left arm that he intended to turn left into the west branch of Highway 22 which at that place is 100 feet wide. At that time Armstrong was not in sight. As Kanzenbach prepared to turn and, possibly, got his left front wheel one foot into the north half of Highway 29, he saw Armstrong at a distance of 1,500 feet and coming toward him at a speed which Kanzenbach estimated at 70 miles per hour. Kanzenbach did not think it safe to cross in front of Armstrong and turned back to the south side of Highway 29, meanwhile reducing his own speed to five or 10 miles per hour. When he looked again he saw Armstrong in the space between the two arms of Highway 22 and at an estimated distance from Kanzenbach of 13 rods (214.5 feet). Armstrong then skidded across the center line and struck the Kanzenbach automobile a glancing blow. The collision occurred entirely in the south half of Highway 29.

Mrs. Kanzenbach's testimony corroborated that of her husband.

Edward Bahr, a Shawano county traffic officer, reached the scene about ten minutes after the collision. The automobiles had not been moved and he made measurements to which he testified on the witness stand. According to him, the marks of Armstrong's tires showed that Armstrong had put on his brakes when he was 99 feet east of the point of collision. For the next 55 feet 6 inches he remained on his own half of the highway meanwhile veering toward the south side with his car tending to skid sideways. At 43½ feet east of the point of impact Armstrong's car crossed to the south of the center line and, spinning counterclockwise, proceeded sideways along the highway in a generally westerly direction until it struck the Kanzenbach automobile. It pushed that auto backwards 8½ feet.

Sec. 85.40 (1) (h), Stats., limits speed to 65 miles per hour in the open highway. Sec. 85.40 (2) (a) provides that no person shall operate a vehicle at a speed greater than is reasonable and prudent under conditions and having regard for the actual and potential hazards then existing. Sub. (2) (b) provides that the operator of every vehicle shall, consistent with sub. (2) (a) operate at an appropriate reduced speed when approaching and crossing an intersection and when special hazard exists with regard to other traffic. The testimony of Mr. and Mrs. Kanzenbach permitted the jury to find that Armstrong was driving at a rate more than 65 miles per hour as well as at a speed greater than was appropriate to the intersection and the potential hazard of Kanzenbach's left turn and thereby supported the finding that Armstrong negligently operated his vehicle at an excessive speed. The other undisputed fact, that Armstrong lost control of his vehicle when he applied the brakes, also warrants the inference that his speed was excessive under the conditions then existing. The loss of control under these circumstances also supports the jury's finding that Armstrong negligently failed to manage and control his automobile properly. The

accident did not occur while Armstrong was controlling his car but when he was failing to control it at all.

The appellants submit that the trial court should have granted their alternative motion for a new trial in the interests of justice. The case was thoroughly tried and there is no reason to think that justice would be better served by trying it again.

The appellants further contend that the trial court should have answered the questions concerning the Kanzenbach negligence as a matter of law instead of submitting them to the jury. Even if we thought, as we do not, that upon the evidence this issue should have been determined by the court, the fact that the jury came to the same result which appellants contend that the court should have reached leaves them with nothing to complain of. No prejudice to them resulted from the submission to the jury.

Appellants assign error because the trial court refused to excuse four jurors for cause. Two of these held liability policies in Farmers Mutual Automobile Insurance Company, the corporation which insured plaintiff's liability and presumably would be liable if defendants were successful in their counterclaims or cross complaints. The policies were nonassessable. Another juror informed the court he had known the plaintiff for thirty-five years and it would be embarrassing for him to sit in the case. This juror was later eliminated by peremptory challenge. A fourth juror had sold the plaintiff the current insurance policy on plaintiff's home and hoped to handle the renewal when the policy expired. When questioned, each of the four informed the court that they believed they could and would decide the case fairly upon the evidence. These jurors were certainly not disqualified as a matter of law. See *Good v. Farmers Mut. Ins. Co.* (1954), 265 Wis. 596, 599, 62 N. W. (2d) 425; *Dishmaker v. Heck* (1915), 159 Wis. 572, 576, 150 N. W. 951. The trial judge has a wide discretion in determining the qualifications of the jurors. He was satisfied that these jurors were competent

and fair. We cannot hold that in these instances his rulings abused a sound discretion nor does the verdict lead us to a suspicion that prejudice toward the defendants on the part of any juror actually existed. However, because it preserves the appearance as well as the reality of an impartial trial, it is a good rule for the trial judge to honor challenges for cause whenever he may reasonably suspect that circumstances outside the evidence may create bias or an appearance of bias on the part of the challenged juror. We consider it would look better in the present action if the challenges to the old acquaintance and to the insurance agent had been sustained, though we find no ground for reversal in their denial.

Appellants say that the form of the questions concerning Armstrong's negligence was defective but the record shows no objection to the verdict before it was given to the jury. Objection is made too late when a party has taken his chances with the question as framed by the court and only objects to it when the answer has proved unfavorable. *Johnson v. Sipe* (1953), 263 Wis. 191, 56 N. W. (2d) 852. The same principle applies to the appellants' present contention that the trial court should have submitted a question in the verdict, requested by appellants, concerning plaintiff's failure to give the statutory signal of his intention to make a left-hand turn. The record does not show any such request but we are informed that counsel raised the point in a conference over the verdict. If there was discussion there, no objection was preserved for our attention and the trial court did instruct the jury that such a signal was required by statute. The requirement was therefore before the jury in their consideration of the question referring to Kanzenbach's management and control.

Appellants also insist that the trial court should have changed the answers to the comparison of negligence so as to put all the causal negligence upon Kanzenbach and none on Armstrong. The jury having found that there was concurrent negligence had the duty of comparing it. We find noth-

ing in this record to justify supplanting the jury's apportionment with one by the court.

The verdict is not contrary to the law or the evidence and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.